UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
SHARAZ BASDEO and ZAMEER KHAN,

                Plaintiffs,

         v.

NEW YORK CITY TRANSIT AUTHORITY,
PAUL SAMMONS, *individually*, YAKOV
LIBEROVICH, *individually*, PETER ETTIENNE,
*individually*, and SYED ALI, *individually*,

                Defendants.
---------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-5553 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiffs Sharaz Basdeo and Zameer Khan commenced the above-captioned action on November 14, 2020, and filed an Amended Complaint on November 18, 2020, against Defendants New York City Transit Authority (the "NYCTA"), and Paul Sammons, Yakov Liberovich, Peter Ettienne, and Syed Ali, (collectively, the "Individual Defendants"). (Compl., Docket Entry No. 1; Am. Compl. Docket Entry No. 5.) In the Amended Complaint, Plaintiffs allege claims of discrimination and retaliation against NYCTA in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and against all Defendants in violation of the New York State Human Rights Law, New York State Executive Law § 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code § 8-107 *et seq.* ("NYCHRL"); aider and abettor liability against the Individual Defendants pursuant to New York State Executive Law § 296(6) and New York City Administrative Code § 8-107(6); and supervisory liability for discrimination against all Defendants under New York City Administrative Code § 8-107(13). (Am. Compl. ¶¶ 109–56.)

Defendants move to dismiss the Title VII discrimination and retaliation claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim and request that the Court decline to exercise supplemental jurisdiction over the state and city claims pursuant to 28 U.S.C.A. § 1367(c)(3).[1]  Plaintiffs oppose the motion.[2]  For the reasons discussed below, the Court grants Defendants' motion and dismisses all of Plaintiffs' claims but grants Plaintiffs leave to amend.

## I.  Background

### a.  Parties

In or around November of 2012 and December of 2014 respectively, Basdeo and Khan were employed as Track Equipment Maintainers ("TEM") by the NYCTA, a public benefit corporation created by statue pursuant to N.Y. Pub. Auth. Law § 1201 *et seq*.  (Am. Compl. ¶¶ 12, 25, 55.)  Basdeo is a Muslim Guyanese man of Indian descent.  (*Id.* ¶ 10.)  Khan is a Muslim Trinidadian man of Indian descent.  (*Id.* ¶ 11.)

Sammons, Liberovich, Ettienne and Ali were Plaintiffs' supervisors, and each had the ability to affect the terms and conditions of Plaintiffs' employment.  (*Id.* ¶ 21.)  Sammons and Liberovich are Caucasian, Ettienne is African American, and Ali is of Indian descent.  (*Id.* ¶¶ 14, 16, 18, 20.)

---

[1]  (Defs.' Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 24; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 24-1; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 25.)

[2]  (Pls.' Mem. in Opp'n to Defs.' Mot. ("Pls.' Opp'n"), Docket Entry No. 28.)

### b.  Alleged instances of discrimination

### i.  Allegations prior to October 31, 2018

Basdeo's complaints about discrimination began in August of 2016, when his interactions with Ali increased.  (*Id.* ¶ 51.)  In September of 2016, Ali, in response to learning that Basdeo had received a promotion, allegedly said, "Guyanese people [are] taking over the Track Equipment Engineering Department."  (*Id.* ¶ 32.)  In December of 2016, Ali became Basdeo's supervisor.  (*Id.* ¶ 33.)  On or about January 4, 2017, Ali "unfairly reprimanded" Basdeo "in an attempt to humiliate[] him" and threatened to demote him if he had the authority to do so.  (*Id.* ¶ 39.)

On February 8, 2017, Basdeo filed a complaint with the NYCTA's Equal Employment Opportunity (the "EEO"), but no formal investigation or disciplinary action was taken by NYCTA.  (*Id.* ¶¶ 40–41.)  In the same month, Basdeo was transferred to a work location that required an hour and a half of additional travel and to a position for which he had no experience or training.  (*Id.* ¶¶ 42–43.)  Basdeo alleges that on March 19, 2018, he was demoted "in retaliation for complaining about the discrimination."  (*Id.* ¶ 45.)  NYCTA has not promoted Basdeo since his demotion.  (*Id.* ¶ 49.)

On July 27, 2018, the EEO found that the work relationship between Ali and Basdeo was "problematic from the beginning."  (EEO Mem. dated July 27, 2018 at 2, annexed to Decl. of Jeremy Weintraub ("Weintraub Decl.") as Ex. 1, Docket Entry No. 24-3.)  The EEO also found that Ali was primarily "concerned about Basdeo's failure to follow safety protocols and his apparent inability to use Excel for necessary duties, like ordering parts and tracking overtime. There were also ongoing complaints from Basdeo's subordinates about [his] inter-personal skills and supervisory style."  (*Id.*)

3

On August 24, 2018, Basdeo brought his concerns to NYCTA CEO Andy Byford, who ordered the EEO to investigate, but no formal investigation was conducted.  (Am. Compl. ¶ 50.)

In 2018, due to seniority, both Basdeo and Khan were eligible for "pick jobs," which allowed them to "work favorable assignments and overtime."  (*Id.* ¶¶ 60–61.)  Plaintiffs understood that under certain circumstances, like emergencies, overtime would be mandatory.  (*Id.* ¶ 61.)  Sammons demanded that Plaintiffs work scheduled overtime during one weekend, which was not mandatory, even though other employees were available and willing to take the assignment.  (*Id.* ¶ 62.)  Plaintiffs refused.  (*Id.*)  In retaliation, Defendants gave subsequent "pick jobs" over other weekends to other employees in order to deny Plaintiffs the benefits of the option to work for overtime wages during the weekend.  (*Id.* ¶ 64.)

On October 19, 2018, Defendants refused overtime shifts to Plaintiffs and instead assigned them to their Caucasian colleagues.  (*Id.* ¶ 65.)  On October 20, 2018, Khan complained about discrimination and, during or around that time, Sammons responded, "Brown skin immigrants should be grateful for having a job with Defendants."  (*Id.* ¶¶ 66–67.)  Plaintiffs' colleagues were "wary" of them due to "Defendants' management pegging them as 'troublemakers.'"  (*Id.* ¶ 70.)

### ii.    Allegations between October 31, 2018 and the filing of an EEOC Charge

On January 3, 2019, Plaintiffs returned to their lockers to find "TRUMP 2020" stickers on their toolboxes, which "implied that [Plaintiffs'] environment was filled with antiquated, stereotypical views towards people of color."  (*Id.* ¶ 71.)  Plaintiffs brought it to their supervisor's attention, but "their complaints were minimized, and nothing was addressed."  (*Id.*)  Plaintiffs filed a complaint with NYCTA's EEO.  (*Id.* ¶ 73.)  "Shortly thereafter," Defendants retaliated against Plaintiffs by denying Plaintiffs' requested days off without

4

providing any reasons.  (*Id.* ¶¶ 73–74.)  On April 26, 2019, Plaintiffs wrote a letter to NYCTA's management and EEO regarding the undesirable tasks Basdeo and Khan were assigned that their counterparts were not required to do.  (*Id.* ¶ 75.)  On August 27, 2019, Basdeo filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and he received a Right to Sue Letter on August 24, 2020.  (*Id.* ¶¶ 6–7.)  Khan never filed an EEOC charge.

### iii.  Allegations after the filing of the EEOC charge

On September 10, 2019, Plaintiffs were reprimanded for not wearing personal protective equipment while their Caucasian colleagues were not reprimanded for the same infraction.  (*Id.* ¶ 76.)  Plaintiffs noticed that other employees were pulled aside and told to wear their personal protective equipment so Plaintiffs could be written up for not wearing theirs.  (*Id.* ¶ 77.) Liberovich told a co-worker, Peter Pena, to wear his personal protective equipment in the presence of Plaintiffs in order to report Plaintiffs "for violating Defendant NYCTA's rules and regulations."  (*Id.* ¶¶ 82–83.)  On October 1, 2019, Plaintiffs again found "Trump" stickers on their lockers.  (*Id.* ¶ 85.)  Plaintiffs reported the incident to their supervisor, but no action was taken by Defendants.  (*Id.*)  On October 2, 2019, Khan witnessed a Caucasian colleague not wearing a safety vest, without reprimand from Ettienne.  (*Id.* ¶ 86.)  On October 3, 2019, Khan was reprimanded for the same infraction and, when he questioned the disparate treatment, Ettienne denied any wrongdoing.  (*Id.*)

On October 30, 2019, Ettienne requested two employees to complete a job but cancelled the assignment when he realized Plaintiffs were available to take the assignment.  (*Id.* ¶ 87.) Plaintiffs allege continued discrimination and retaliation on November 3, 2020, for "refusal to give . . . overtime work."  (*Id.* ¶¶ 53–54).

### iv.   Undated allegations

Plaintiffs allege that Ali called Basdeo "discriminatory names" and made references to his age, stating that "due to Plaintiff's age, he was not capable of being in the MS2 position." (*Id.* ¶¶ 36–37.)  In addition, the NYCTA "hinder[ed] [Basdeo's] chances of getting promoted" by "fill[ing] positions by listing qualification[s] unrelated to . . . Basdeo's experience and resume history."  (*Id.* ¶ 48.)

Plaintiffs also refer to a "Defendant Brown," a non-party to this matter, who instructed Basdeo "to work on a different onsite location without giving him an option to drive his own personal vehicle [to] this location" even though "Basdeo witnessed other employees not in [his] protected group allowed this beneficial option."  (*Id.* ¶ 68.)

Plaintiffs also often found themselves being sent to perform roadwork in freezing weather.  (*Id.* ¶ 70.)  On the weekend, when Plaintiffs did work overtime, they were routinely assigned the least desirable jobs such as working with the "wet saw."  (*Id.*)

## II.   Discussion

### a.   Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor."  *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021); *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (same).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63

(2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Cavello Bay Reinsurance*

*Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).

Although all allegations contained in the complaint are assumed to be true, this tenet is

"inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

      **b.   Plaintiffs fail to allege any adverse employment action under Title VII**

      Defendants argue that "there is no timely allegation of an adverse employment action" as

to Plaintiffs' Title VII claims.  (Defs.' Mem. 1.)  In support, Defendants contend that the Court

should consider "only employment actions alleged to have occurred from October 31, 2018,

through August 27, 2019, the 300-day period prior to Basdeo filing a discrimination charge with

the EEOC,"[3] (Defs.' Mem. 11), because the continuing violation doctrine does not apply where

Plaintiffs fail to allege an adverse employment action within the limitations period, the doctrine

was not asserted in the EEOC charge, and Plaintiffs' allegations constitute discrete acts that are

insufficient to invoke the doctrine, (Defs.' Reply 3–9).

      Plaintiffs argue that, under the continuing violation doctrine, they have "illustrated a

sequence of events from the conduct that occurred before and after the 300 days of filing of the

EEOC Charge creating 'a mosaic of intentional discrimination.'"  (Pls.' Opp'n 8–9.)  In support,

Plaintiffs contend that because the "EEOC [c]harge was timely to an act of discrimination, all

---

    [3]  Khan brings his Title VII claims via the "[s]ingle [f]ile [d]octrine."  (Am. Compl. ¶ 8);
*see Snell v. Suffolk County*, 782 F.2d 1094, 1101 (2d Cir. 1986) ("[W]here two plaintiffs allege
that they were similarly situated and received the same discriminatory treatment, the purposes of
the exhaustion requirement are adequately served if one plaintiff has filed an EEOC complaint."
(alteration in original) (quoting *De Medina v. Reinhardt*, 686 F.2d 997, 1013 (D.C. Cir. 1982))).

claims of acts of discrimination pursuant to that policy will be timely even if untimely standing alone." (Pls.' Opp'n 6–8.)

"Before bringing a Title VII suit in federal court, an individual must first present 'the claims forming the basis of such a suit . . . in a complaint to the EEOC or the equivalent state agency.'" *Littlejohn v. City of New York*, 795 F.3d 297, 322 (2d Cir. 2015) (alteration in original) (quoting *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (per curiam)); *see Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." (quoting *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003))); *see also* 42 U.S.C. § 2000e-5(e) (providing procedures and deadlines for filing charges with the EEOC, following receipt of a right-to-sue letter, in court); *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015) ("'Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme' . . . accordingly, it is 'a precondition to bringing such claims in federal court.'" (first alteration in original)). "The complainant must file the complaint with the relevant agency 'within 300 days of the alleged discriminatory conduct and, before bringing suit, must receive a "Notice of Right to Sue" letter from the EEOC.'" *Littlejohn*, 795 F.3d at 322 (quoting *Williams*, 458 F.3d at 69); *see also Rivas v. N.Y.S. Lottery*, 745 F. App'x 192, 192–93 (2d Cir. 2018) ("Title VII requires individuals aggrieved by acts of discrimination to file a charge with the [EEOC] within 300 days 'after the alleged unlawful employment practice occurred.'" (quoting 42 U.S.C. § 2000e-5(e))), *cert. denied*, 140 S. Ct. 43 (Oct. 7, 2019); *Cetina v. Longworth*, 583 F. App'x 1, 2 (2d Cir. 2014) ("A Title VII employment discrimination claim must be filed with the [EEOC] . . . or New York State Division of Human Rights . . . within 300

days of the alleged unlawful practice."); *Foy v. New York*, No. 21-CV-7647, 2021 WL 4311284, at *3 (S.D.N.Y. Sept. 20, 2021) ("Before filing suit under Title VII, a plaintiff must first file a timely charge with the [EEOC] and obtain a Notice of Right to Sue.").

"Under the continuing violation doctrine, a plaintiff may bring claims that would otherwise be barred by the statute of limitations provided that 'an act contributing to that [violation] took place within the statutory time period.'" *Sant v. Stephens*, 821 F. App'x 42, 45 (2d Cir. 2020) (alteration in original) (quoting *Purcell v. N.Y. Inst. of Tech. – Coll. of Osteopathic Med.*, 931 F.3d 59, 65 (2d Cir. 2019))); *see Velez v. Reynolds*, 325 F. Supp. 2d 293, 312 (S.D.N.Y. 2004) ("The continuing violation doctrine generally provides that where there is a discriminatory practice or policy, the accrual time for the statute of limitations may be delayed until the last act in furtherance of the policy." (citing *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999))); *see also Leonhard v. United States*, 633 F.2d 599, 613 (2d Cir. 1980) ("[A] claim to redress a continuing wrong will be deemed to have accrued on the date of the last wrongful act."); *Margrabe v. Sexter & Warmflash, P.C.*, No. 07-CV-2798, 2009 WL 361830, at *7 (S.D.N.Y. Feb. 11, 2009) ("The continuing wrong doctrine provides that, in certain cases involving continuous or repeated wrongs, the statute of limitations accrues upon the date of the last wrongful act." (first citing *Mix v. Del. & Hudson Ry. Co.*, 345 F.3d 82, 88 (2d Cir. 2003); and then citing *Leonhard*, 633 F.2d at 613)), *aff'd*, 353 F. App'x 547 (2d Cir. 2009). "Accordingly, where the continuing violation doctrine applies, the limitations period begins to run when the defendant has 'engaged in enough activity to make out an actionable . . . claim.'"[4]

---

[4] In addition, extensions of the continuing violation doctrine have been generally disfavored among district courts within the Second Circuit and "applied only upon a showing of compelling circumstances." *Remigio v. Kelly*, No. 04-CV-1877, 2005 WL 1950138, at *8 (S.D.N.Y. Aug. 12, 2005) (quoting *Nakis v. Potter*, No. 01-CV-10047, 2004 WL 2903718, at

*Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (alteration in original) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)); *see also McFadden v. Kralik*, No. 04-CV-8135, 2007 WL 924464, at *7 (S.D.N.Y. Mar. 28, 2007) (stating that "[a] party cannot invoke the doctrine to avoid statute of limitations problems when he knew after each allegedly wrongful act that it was actionable, but chose not to file federal claims" (quoting *Konigsberg v. Lefevre*, 267 F. Supp. 2d 255, 262–63 (N.D.N.Y. 2003))); *Sundaram v. Brookhaven Nat'l Lab'ys*, 424 F. Supp. 2d 545, 560 (E.D.N.Y. 2006) ("It 'would subvert the underlying purpose of the time limit, which is to ensure expedition in the filing and handling of claims of discrimination,' to apply the continuing violation exception in cases where a plaintiff is on notice of alleged discriminatory acts." (quoting *Govia v. Century 21, Inc.*, 140 F. Supp. 2d 323, 325 (S.D.N.Y. 2001))). In addition, the continuing violation doctrine "may only be predicated on continuing unlawful [wrongs] and not on the continuing effects of earlier [wrong]ful conduct." *Margrabe*, 2009 WL 361830, at *7 (alterations in original) (quoting *Selkirk v. State*, 671 N.Y.S.2d 824, 825 (App. Div. 1998)); *see also Harris*, 186 F.3d at 250 ("[A] continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred discriminatory act." (citing *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997))); *McFadden*, 2007 WL 924464, at *7 ("[Th]e mere fact that wrongful acts may have a continuing impact is not sufficient to find a continuing violation." (alteration in original) (quoting *Blankman v. County of Nassau*, 819 F. Supp. 198, 207 (E.D.N.Y. 1993))).

The continuing violation doctrine applies only "to claims that by their nature accrue only

---

*10 n.2 (S.D.N.Y. Dec. 15, 2004)); *Bernstein v. The MONY Grp., Inc.*, 228 F. Supp. 2d 415, 418 (S.D.N.Y. 2002) ("As a general rule, courts in the Second Circuit have viewed continuing violation arguments with disfavor." (quoting *Curtis v. Airborne Freight Corp.*, 87 F. Supp. 2d 234, 244 (S.D.N.Y. 2000))).

after the plaintiff has been subjected to some threshold amount of mistreatment" and not to "discrete unlawful acts, even where those discrete acts are part of a 'serial violation[].'" *Gonzalez*, 802 F.3d at 220 (alteration in original) (quoting *Morgan*, 536 U.S. at 114–15)); *see Lucente v. County of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020) (stating that the continuing violation doctrine does not apply to "discrete unlawful acts," even if those discrete unlawful acts are part of "serial violations" (citing *Morgan*, 536 U.S. at 114–15)); *Richard v. N.Y.C. Dep't of Educ.*, No. 16-CV-957, 2017 WL 1232498, at *7 (E.D.N.Y. Mar. 31, 2017) ("[T]he continuing violation doctrine will not apply to 'discrete acts' of discrimination, even if they are 'related to acts alleged in timely filed charges.'" (quoting *Morgan*, 536 U.S. at 113)).  "A discrete act is one that '"occurred" on the day that it "happened"' and can include 'termination, failure to promote, denial of transfer, or refusal to hire,'" *McPartlan-Hurson v. Westchester Cmty. Coll.*, 804 F. App'x 41, 43 (2d Cir. 2020) (quoting *Morgan*, 536 U.S. at 110, 114), as well as disparate disciplining and negative performance evaluations, *see Valtchev v. City of New York*, 400 F. App'x 586, 589 (2d Cir. 2010) (affirming the district court's finding that the plaintiff's negative evaluations and disciplinary proceedings were discrete acts that did not trigger the continuing violation exception); *Pietri v. N.Y.S. Off. of Ct. Admin.*, 936 F. Supp. 2d 120, 134 (E.D.N.Y. 2013) (explaining that denial of promotions, disparate disciplinary actions, and denial of transfer opportunities "are all discrete acts of discrimination and each incident 'constitutes a separate actionable "unlawful employment practice"'" (quoting *Morgan*, 536 U.S. at 114)).  If these discrete acts "fall outside the limitations period, [they] cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012). However, time-barred discrete acts "may constitute relevant 'background evidence in support of

a timely claim.'" *Brown v. Cornell Univ.*, 758 F. App'x 226, 227 n.2 (2d Cir. 2019) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004)).

Because Plaintiffs do not allege any timely actionable conduct within the 300-day limitations period, Plaintiffs fail to state a discrimination claim or retaliation claim regardless of whether the alleged conduct constitutes a series of discrete acts, *see Littlejohn*, 795 F.3d at 322; *Rivas*, 745 F. App'x at 193, or whether the continuing violations doctrine is invoked,[5] *see Valtchev*, 400 F. App'x at 589 ("To bring a claim within the continuing violation exception, a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004))); *Christiansen v. Omnicom Grp., Inc.*, 167 F. Supp. 3d 598, 612 (S.D.N.Y. 2016) (holding that the continuing violation doctrine did not apply because the plaintiff failed to allege any specific act of discrimination within the limitations period), *aff'd in part, rev'd in part on other grounds*, 852 F.3d 195 (2d Cir. 2017).

### i.   Title VII discrimination claim

To establish a prima facie case of employment discrimination under Title VII, a plaintiff must show that: (1) "[he] is a member of a protected class; (2) [he] was qualified for the position [he] held; (3) [he] suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination." *Mills v. S. Conn. State Univ.*, 519 F. App'x 73, 75 (2d Cir. 2013) (last alteration in original); *see also Doe v. City of New York*, 473 F. App'x 24, 27 (2d Cir. 2012); *Cherry v. N.Y.C. Hous. Auth.*, 564 F. Supp. 3d 140, 165 (E.D.N.Y. 2021).

---

[5]  While Plaintiffs at times seem to suggest a hostile work environment claim in their statement of facts, Plaintiffs do not allege such a claim in the Amended Complaint nor make any legal arguments as to such a claim.

Plaintiffs' sole allegation of discrimination within the requisite 300-day period, that Plaintiffs "returned to their lockers to find 'TRUMP 2020' stickers on their personal toolboxes," (Am. Compl. ¶ 71), is not an "adverse employment action" because it did not affect the terms and conditions of Plaintiffs' employment.  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) ("A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000))); *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) ("An 'adverse employment action' is one which is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" (quoting *Galabya*, 202 F.3d at 640)); *Cotterell v. Gilmore*, 64 F. Supp. 3d 406, 422 (E.D.N.Y. 2014) ("Employment actions that the Second Circuit has deemed sufficiently disadvantageous to constitute an 'adverse employment action' include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."'" (quoting *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008))); *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 351 (S.D.N.Y. 2006) ("A material adverse change is one that has an attendant negative result, a deprivation of a position or an opportunity." (quoting *Pimentel v. City of New York*, No. 00-CV-326, 2002 WL 977535, at *3 (S.D.N.Y. May 14, 2002))).  Thus, Plaintiffs fail to allege a discrimination claim because they fail to allege any adverse action that took place within the limitations period.[6]

---

[6]  Plaintiffs also fail to allege that any of the Defendants were responsible for the placement of the "TRUMP 2020" stickers, and nothing in the record suggests that these Defendants affixed the stickers onto Plaintiffs' toolboxes.  Thus, even if this incident qualified as an adverse employment action, Plaintiffs have not met their burden of establishing that the action

####     ii.    Title VII retaliation claim

To establish a prima facie case of retaliation, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Littlejohn*, 795 F.3d at 316 (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)); *Hunt v. Consol. Edison Co. of N.Y., Inc.*, No. 18-CV-7262, 2021 WL 3492716, at *8 (E.D.N.Y. Aug. 9, 2021).

The sole retaliatory act in the Amended Complaint that falls within the limitations period is that Defendants denied Plaintiffs' requested days off "with no reasons as to why their requests were denied" after Plaintiffs filed a complaint with the NYCTA's EEO.  (Am. Compl. ¶¶ 73–74.) However, this alleged retaliatory act is not an adverse employment action.  *See Rasko v. N.Y.C. Admin. for Children's Servs.*, 734 F. App'x 52, 56 (2d Cir. 2018) (holding that denial of a partial day off was insufficient to constitute an adverse employment action for retaliation); *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 25–26 (2d Cir. 2014) (same); *Abalola v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 20-CV-6199, 2022 WL 973861, at *7 (S.D.N.Y. Mar. 30, 2022) ("[T]he denial of [the plaintiff's] requests for days off does not constitute an adverse employment action."); *Wharton v. County of Nassau*, No. 10-CV-265, 2013 WL 4851713, at *9 (E.D.N.Y. Sept. 10, 2013) ("Denials of vacation time are not adverse actions." (collecting cases)); *Chin-McKenzie v. Continuum Health Partners*, 876 F. Supp. 2d 270, 286 (S.D.N.Y.

---

occurred under circumstances permitting an inference of discrimination.  *Joseph v. Brooklyn Dev. Disabilities Servs. Off.*, No. 12-CV-4402, 2016 WL 6700831, at *24 n.46 (E.D.N.Y. Sept. 30, 2016) (finding that the plaintiff failed to meet his burden of establishing an inference of discrimination because the plaintiff did not specify which individual committed the allegedly adverse employment action or "any link between that employee and any of the actors responsible for the other discriminatory conduct he alleges").

2012) (finding that the denial of requested days off was a "minor annoyance" rather than a "materially adverse" retaliatory act).  Thus, Plaintiffs fail to state a retaliation claim within the limitations period.

Accordingly, the Court dismisses Plaintiffs' Title VII discrimination and retaliation claims for failure to state a claim, but grants Plaintiffs leave to amend the Amended Complaint.

### c.   NYSHRL and NYCHRL claims

Defendants argue that if the Court dismisses Plaintiffs' Title VII claims, "it should decline to exercise supplemental jurisdiction over the remaining State and City law claims." (Defs.' Mem. 15–16.)

Plaintiffs argue that, since they stated viable claims under Title VII, the Court should exercise supplemental jurisdiction over Plaintiffs' claims under NYSHRL and NYCHRL.  (Pls.' Opp'n 11.)

As a result of the Court's dismissal of Plaintiffs' Title VII claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' NYSHRL and NYCHRL claims.  *All. of Auto. Mfrs., Inc. v. Currey*, 610 F. App'x 10, 14 (2d Cir. 2015) (holding it was "not improper for the court to decline to exercise its supplemental jurisdiction" after it properly dismissed the plaintiff's constitutional claims); *One Commc'ns Corp. v. J.P. Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010)) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims." (citing *WWBITV, Inc. v. Village of Rouses Point*, 589 F.3d 46, 52 (2d Cir. 2009))).

### d.   Leave to amend

The Court grants Plaintiffs leave to file a second amended complaint to attempt to replead their claims.  In their second amended complaint, Plaintiffs must allege facts to satisfy

Title VII's requirement that aggrieved individuals file a charge with the EEOC within 300 days after the alleged unlawful employment practice occurred. *Rivas*, 745 F. App'x at 192–93 (quoting 42 U.S.C. § 2000e-5(e))). Any second amended complaint must be filed within thirty days of the date of this Memorandum and Order. A second amended complaint will completely replace the Amended Complaint and must stand on its own without reference to the Amended Complaint and must contain all of the claims Plaintiffs seek to pursue. The second amended complaint must be captioned "Second Amended Complaint" and bear the same docket number as this Memorandum and Order. If Plaintiffs elect not to file a second amended complaint or fail to file a second amended complaint within thirty days of this Memorandum and Order, the Court will dismiss the claims. Plaintiffs may replead their state law claims in their second amended complaint.

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss. The Court grants Plaintiffs leave to amend the Amended Complaint within thirty days from the date of this Memorandum and Order. If a second amended complaint is not timely filed, the Court will direct the Clerk of Court to enter judgment and close this case.

Dated: September 9, 2022
         Brooklyn, New York

                              SO ORDERED:


                              _____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge